IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 11-177 |
| | ) |
| JIMMIE McLAUGHLIN | ) |

## OPINION AND ORDER

COHILL, Senior District Court Judge.

Defendant Jimmie McLaughlin is charged with one count of possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(i). Presently before the Court are the following motions filed by the Defendant: 1) Motion to Suppress Evidence; 2) Motion to Produce Evidence Under Rules 404(b) and 609; and 3) Motion to Compel Production of Evidence.

On July 8, 2011, the vehicle Mr. McLaughlin was driving was pulled over by Robinson Township Police Officer Brad Mermon on suspicion of driving under the influence. Officer Mermon later obtained a Commonwealth of Pennsylvania search warrant and upon its execution, seized a black zippered bag located on the rear passenger seat of the vehicle, which contained approximately 105 grams of heroin, $25,691.00 in U.S. currency, and a sheet of paper commonly referred to as an "owe sheet."

The parties agree that a hearing on the motions is not necessary. For the reasons that follow, we will deny the Defendant's motions.

I. **Applicable Law**

The Defendant argues that the search warrant authorizing the search and seizure of the vehicle he was driving, as well as the black zippered bag, was issued without probable cause

in violation of his rights under the Fourth Amendment to the United States Constitution, which protects against unreasonable searches and seizures. U.S. CONST. amend. IV. When making a probable cause determination, a magistrate must ascertain "whether there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983) (internal citations omitted)), *cert. denied*, 510 U.S. 1177 (1994). The well-known test set forth in Gates requires that the issuing magistrate "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" there is probable cause to support a warrant. Gates, 462 U.S. at 238. Nevertheless, we must pay great deference to a magistrate's determination of probable cause. Id. at 236.

"[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Id. at 238-9 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). "The supporting affidavit must be read in its entirety and in a common sense and nontechnical manner." Conley, 4 F.3d at 1206. The affidavit should be read "with the focus on what the affidavit includes, not what is missing." United States v. Miknevich, 638 F.3d 178, 184 (3d Cir. 2011). A warrant must be upheld "as long as there is a substantial basis for a fair probability that evidence will be found." Conley, 4 F.3d at 1205. Reviewing courts must not "simply rubber stamp a magistrate's conclusions." United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1983) (*cert. denied sub nom.*, Sanchez v. United States, 466 U.S. 904 (1984)). However, the United States Supreme Court has directed that although it may be difficult to ascertain whether an affidavit "'demonstrates the existence

of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" Conley, 4 F.3d at 1205 (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965) (quoted with approval in Gates, 462 U.S. at 237 n.10)).

## II. Motion to Suppress Evidence

### A. The Affidavit of Probable Cause

On the basis of the information in the affidavit, the magistrate concluded that there was probable cause to believe that evidence of a crime would be found in the vehicle and/or the black zippered bag. The affidavit in support of the application for search warrant was sworn to by Officer Brad Mermon and reveals the following pertinent information: On July 8, 2011, while monitoring traffic in his marked police vehicle, Officer Mermon observed Mr. Jimmie McLaughlin driving a 2004 silver Chevrolet Trailblazer, PA HTM8928, with no registration lamps. (Affidavit of Probable Cause [Doc. 30-1] at p. 2). Mr. McLaughlin was driving between 30 and 35 m.p.h. in a clearly marked 45 m.p.h. zone and he continued braking although there were no vehicles in front of him. Id. Officer Mermon stopped the vehicle in the parking lot of the Comfort Inn at 12:51 a.m. Id.

Mr. McLaughlin began to exit the vehicle and Officer Mermon ordered him to remain in the vehicle. Id. A female passenger, who identified herself as Ciara Chyrell Salter, was seated in the front passenger seat. Id. Officer Mermon detected a strong odor of alcohol on Mr. McLaughlin's breath and person and observed two beer cans on the front passenger side floor of the vehicle. Id. When asked if he'd been drinking, Mr. McLaughlin stated that he had consumed one beer. Id. Mr. McLaughlin was mumbling and "would not make eye

3

contact." Id. Mr. McLaughlin provided identification to Officer Mermon, who called for assistance. Id.

When Sergeant Felt and Officer Pilewski arrived on the scene, they ordered Mr. McLaughlin from the vehicle to perform some field sobriety tests. Id. As he exited the vehicle, Mr. McLaughlin consented to a pat down search from Officer Pilewski, who found $940 in U.S. currency, rolled and bound with a rubber band, in the front left pocket of Mr. McLaughlin's sweatpants. Id. Officer Mermon returned to his police vehicle to check the identities of Mr. McLaughlin and Ms. Salter. Id. Officer Mermon then observed Mr. McLaughlin attempting to reenter the Trailblazer via the rear passenger side door. Id. Officer Pilewski "had to go hands on to prevent [Mr.] McLaughlin from getting into the vehicle." Id. Officer Mermon then jumped out of his police vehicle to assist Officer Pilewski, "who had taken [Mr. McLaughlin] to the ground." Id. Mr. McLaughlin was forcibly handcuffed after refusing to place his hands behind his back. Id.

Officer Mermon advised Sergeant Felt to watch Ms. Salter, who remained seated in the front passenger seat of the vehicle. Id. While doing so, Sergeant Felt saw in plain view a medium sized black zippered bag on the right rear passenger seat of the vehicle, the area which Mr. McLaughlin had just attempted to access. Id. Sergeant Felt stated that the bag was unzipped, that he noticed what he believed to be a large sum of U.S. currency, and that he feared a weapon may be inside the bag. Id. Sergeant Felt took possession of the bag and secured it in his police vehicle to prevent Ms. Salter from accessing it. Id. Officer Mermon then handcuffed Ms. Salter and placed her into the back of his police vehicle. Id. Mr.

4

McLaughlin was placed into the back of another police vehicle. Id. The Trailblazer was towed to the police station. Id.

At the police station, Officers Mermon and Pilewski counted the money that was found in Mr. McLaughlin's front left pocket, which amounted to $940 in U.S. currency. Id. Officer Mermon then applied for a search warrant to search the Trailblazer, which was registered to Ms. Sheree Griffin, as well as the medium sized black zippered bag located on the rear passenger seat for "anything pertaining to drug possession and drug distribution which includes any and all U.S. currency, firearms, contraband, and drug paraphernalia." Id. at p. 1. Officer Mermon, after reciting the above-described facts and circumstances, stated that he had probable cause to search the vehicle and the black zippered bag based on his "twelve years of training and experience that a large sum of cash packaged in this manner is consistent with proceeds from illegal drug transactions; as well as [Mr.] McLaughlin's lengthy criminal history which has numerous drugs and weapons arrests." Id. at pp. 2-3.

**B. Analysis**

Based upon these allegations, Senior Magisterial District Judge Edward Burnett authorized the search, and the officers subsequently found the bag to contain $25,691 and 81 bricks (4050 baggies) of heroin marked with a red stamp "Fast Five." (Police Criminal Complaint [Doc. 30-2] at pp. 6-7). In his motion, the Defendant argues that the affidavit of probable cause does not contain facts by which the issuing magistrate could have concluded that evidence of a crime would be found in the vehicle or the black zippered bag. The Defendant contends that the information contained in the affidavit lacked specificity in describing Officer Mermon's twelve years of training and experience; that the affidavit failed

5

to describe a nexus between the rubber banded money found on the Defendant's person and the contents of the vehicle and/or the black zippered bag; that the affidavit failed to describe how the money found on the Defendant's person was connected with an illegal drug transaction; and that the affidavit provided no description of the nature of the Defendant's prior arrests. The Defendant further alleges that the search and seizure of the vehicle and black zippered bag were not incident to the Defendant's arrest. We note that the affidavit alleges the following violations: rear lighting requirements, minimum speeds, driving under the influence, DUI refusal, resisting arrest, and disorderly conduct. (Affidavit of Probable Cause [Doc. 30-1] at pp. 1, 4).

In response, the government contends that there was sufficient evidence and information presented in the affidavit for the magistrate to find probable cause to issue the search warrant. The government contends that the affidavit described the manner in which the Defendant operated the vehicle and described the Defendant's apparently intoxicated state, establishing probable cause for his detention and arrest. Additionally, the government underscores how the affidavit described the Defendant's attempt to reenter the vehicle in the area where the black zippered bag was located, raising concerns that a firearm might be located in the bag. The government contends that the totality of these circumstances, including the Defendant's history of prior drugs and weapons arrests and the stated officer's twelve years of experience in law enforcement, including the officer's familiarity with the packaging of narcotics proceeds, established probable cause that evidence of drug possession and distribution would be found in the vehicle and/or the black zippered bag.

After consideration of the affidavit and the normal inferences that can be drawn from the affidavit, we conclude that a there was a substantial basis for the magistrate to believe that evidence of a crime (anything pertaining to drug possession and drug distribution which includes any and all U.S. currency, firearms, contraband and drug paraphernalia) sought in the warrant would be found in the vehicle and/or the black zippered bag. The evidence presented in the affidavit, along with the "normal inferences" that can be drawn from the affidavit, reveals in part that that Mr. McLaughlin was under the influence of alcohol and that he was actively attempting to conceal evidence of a crime in the vehicle as evidenced by his physical aggression and resistance to orders. After the rubber-banded $940 was discovered during the consensual "pat down," and Officer Mermon walked away from McLaughlin and returned to his police vehicle, Mr. McLaughlin tried to access the black bag on the rear passenger seat, and had to be restrained to prevent what common sense dictates was, in all likelihood, an attempt to either hide the bag or to access what the officers reasonably believed may be a weapon.

Moreover, "direct evidence linking the place to be searched to the crime is not required for the issuance of a search warrant." Conley, 4 F.3d at 1207; see United States v. Lunt, 732 F.Supp. 599, 603 (W.D. Pa. 1990) ("It is irrelevant to the application for the search warrant that these [summary] charges are not related to the items sought in the search warrant"). It is a minor inferential leap to conclude that a person alleged to be actively and repeatedly involved in drug use and trafficking would also carry large sums of U.S. currency bound in rolls by rubber bands. See United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) ("[P]robable cause can be, and often is, inferred by considering the type of crime, the nature


7

of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime" (internal quotations and citations omitted)). The magistrate appropriately gave considerable weight to the conclusions of an experienced law enforcement officer regarding where evidence of a crime was likely to be found and was entitled to draw reasonable inferences about where evidence was likely to be kept, based on the nature of the evidence and the type of offense. United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000).

We find that under the "totality of the circumstances," including Officer Mermon's twelve years of training and experience, which led him to believe that the U.S. currency found on Mr. McLaughlin's person and the manner in which it was bound was evidence of an illegal drug transaction, there was a substantial basis for concluding that probable cause existed. Considering all the circumstances set forth in the affidavit, the magistrate made a practical, common sense determination that there was a fair probability that contraband or evidence of a crime would be found in the vehicle and/or black zippered bag. We have considered the cases cited by defense counsel in support of the argument that the affidavit was so lacking of indicia of probable cause as to make reliance on it unreasonable. We find that the affidavit of probable cause contained enough facts to create a substantial basis for the issuing magistrate to believe there was probable cause that evidence of a crime would be found in the vehicle and/or the black zippered bag.

Furthermore, even if the affidavit was insufficient to find probable cause to justify the issuance of the warrant, the exclusionary rule precluding the admission of evidence obtained during an unconstitutional search is inapplicable because the officers relied in good faith upon

the validity of the warrant, and their reliance was objectively reasonable. If the purpose of the exclusionary rule is to deter unlawful police conduct, then the suppression of evidence is appropriate only if the "officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." United States v. Leon, 468 U.S. 897, 919 (1984). A court "should not suppress evidence seized under a warrant's authority, even if that warrant is subsequently invalidated, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Stearn, 597 F.3d 540, 561 (3d Cir. 2010) (internal citations omitted). It is the magistrate's responsibility to "determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." Leon, 468 U.S. at 921. Ordinarily, "an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient." Id. In executing the search warrant, the officers relied in good faith on the warrant's validity and, even if the warrant was deficient, which we find it was not, the exclusionary rule is inapplicable and the evidence seized is admissible under the good faith exception as stated in Leon.

### III. Other Motions

Mr. McLaughlin filed a motion to produce evidence under the Federal Rules of Evidence 404(b) and 609 [Doc. 31]. Rule 404(b) provides that evidence of a crime, wrong, or other act by the Defendant may be admissible for the purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). On request by the Defendant, the government must "(A)

9

provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial – or during trial if the court, for good cause, excuses lack of pretrial notice." Id. In response to the Defendant's Rule 404(b) motion, the government contends that when it has decided on Mr. McLaughlin's prior bad acts that it intends to introduce as evidence at trial, it will produce the evidence to Mr. McLaughlin. The government further contends that it is not required to produce such evidence until 14 days prior to trial. In response to Mr. McLaughlin's suggestion that a pretrial hearing is required to resolve any Rule 404(b) admissibility issues, the government contends that the appropriate time for resolution of any such issues is usually at trial, not at the pretrial stage. In response to the Defendant's Rule 609 motion, the government contends that it has provided Mr. McLaughlin with a copy of his criminal record, as required by the rule, and will use such record as impeachment material under Fed. R. Evid. 609 if he chooses to testify. We credit the government's contentions and trust that the government will provide the necessary evidence to Mr. McLaughlin's counsel in a timely fashion as is required. Accordingly, the Defendant's motion will be denied.

Mr. McLaughlin also filed a motion to compel the production of evidence [Doc. 32]. In response, the government contends that it has complied with its discovery obligations under Federal Rule of Criminal Procedure 16 and will continue to do so if or when it receives additional information within the scope of said rule. In response to Mr. McLaughlin's allegation that the government has been hostile to defense counsel's attempts to view and inspect the evidence, the government contends that because the evidence in question is a controlled substance and is currently being held at the Drug Enforcement Administration

Northeast Laboratory in New York, NY, the manner in which Mr. McLaughlin and/or his counsel may view and inspect the evidence is subject to specific security measures. Further, government contends DEA protocol requires a court order in order to authorize the transportation of the drugs to another laboratory, as well as certification that the laboratory to which the drugs will be transferred is equipped to handle Schedule I controlled substances, such as heroin.

Assistant United States Attorney Troy Rivetti states that he has been in contact with Mr. McLaughlin's counsel regarding inspecting, photographing, and possibly re-weighing the evidence. The government further contends that Mr. Rivetti has arranged for a series of photographs to be taken of the evidence and asked whether those photographs were sufficient for counsel's purposes, as well as offered to assist with arranging for defense counsel's inspection of the evidence at an appropriately equipped laboratory. The government contends that Mr. McLaughlin's counsel has not responded to Mr. Rivetti's email sent February 5, 2012 and has not provided the government with any information about any anticipated inspection and/or examination and/or re-weighing of the drugs. Under these circumstances, we see no reason to disbelieve the government's contentions and will therefore trust that Mr. Rivetti will assist with arranging for the defense's inspection of the evidence within the parameters of the above-outlined security measures as required by the DEA. The motion to compel will be denied.

### IV.   Conclusion

For the forgoing reasons, we will deny Defendant's motions. An appropriate Order follows.

## ORDER

AND NOW, to-wit, this 20th day of June 2012, it is hereby ORDERED, ADJUDGED and DECREED that Defendant Jimmie McLaughlin's Motion to Suppress Evidence [Doc. 30], Motion to Produce Evidence Under Rule 404(b) and 609 [Doc. 31], and Motion to Compel Production of Evidence [Doc. 32] are hereby DENIED.

/s/ Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.
Senior District Court Judge

cc: counsel of record